UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FRANK JOHN RICHARD,<br>    Plaintiff,<br>v.<br><br>O.T. WINN, *et al.*,<br>    Defendants.<br>_____/ | Case No.: 21-12064<br><br>Linda V. Parker<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 21)**

I. **PROCEDURAL HISTORY**

Plaintiff Frank Richard filed this civil rights matter, without the assistance of counsel, on August 26, 2021, against five Michigan Department of Corrections ("MDOC") employees.  (ECF No. 1).  He filed an amended complaint on November 12, 2021.  (ECF No. 16).  On January 26, 2022, in lieu of filing an answer to the amended complaint, Defendants Jodie Anderson, M. Guerin, Thomas Haynes, C. LaBreck, and O.T. Winn ("Defendants") moved for summary judgment based on exhaustion of administrative remedies.  (ECF No. 21).  The motion is fully briefed.  (ECF Nos. 22, 23).  The motion was referred to the undersigned for report and recommendation.  (ECF No. 24).

For the reasons below, I recommend Defendants' motion for summary judgment be **GRANTED IN PART, DENIED IN PART**.

## II.  AMENDED COMPLAINT ALLEGATIONS

Plaintiff brings this suit alleging violations of the First Amendment right to the freedom of expression, the Eighth Amendment guarantee against cruel and unusual punishment, and the due process clause of the Fourteenth Amendment.

According to the amended complaint, on May 1, 2018, defendant Winn met with Plaintiff and 24 other inmate military veterans to have the inmates sign a "Regaining Honor" agreement. (ECF No. 16, PageID.106). The inmates were not given an option to not sign the agreement. Plaintiff alleges this is the basis for his First Amendment free speech claim. Three days later, Defendant Haynes called Plaintiff in for a meeting in which he directed Plaintiff to sign the agreement. Haynes told Plaintiff that failure to sign it would result in the loss of his job as a dog handler in the Veterans Unit Dog Program and being moved to Unit 900. He signed the agreement, but did so "under protest." (*Id.*). Plaintiff sent a letter to MDOC Director Heidi Washington about Haynes' conduct. On June 6, 2018, Haynes "berated" Plaintiff about the letter. (*Id.* at PageID.107).

On September 3, 2019 Plaintiff wrote a fake, humorous adoption notice for a dog in the Veterans Dog Program, showed it to other inmates, and left it on his desk. Two days later Haynes and Defendant Guerin called him into their office.

2

Plaintiff was confronted with the adoption notice and he maintained it was written as a joke. Haynes fired him from the dog program and tried to have Plaintiff sign a blank "CSJ-363" work report, but Plaintiff refused. Plaintiff was moved to the 900 unit later that day. As best can be gleaned from the amended complaint, Plaintiff wrote a letter, or kite, complaining that he was asked to sign a blank work form and that work forms from June through September 5, 2019, should be removed because they were filled out after Plaintiff signed them. Defendant LaBreck, who presumably reviewed the kite, refused to amend the work forms. (*Id.* at PageID.108).

On September 24, 2019, Plaintiff was ordered to pack his belongings for a transfer to another prison. Plaintiff wrote a grievance for LaBreck's failure to correct or remove the work forms, which was filed on September 25, 2019. That day he was moved to a correctional facility in Muskegon, Michigan. At the new facility he was told he would be unable to complete the anger management course he started at the prior facility. He sent a request to the Corrections Mental Health Rights Specialist, a letter to Director Washington, and a letter to the Legislative Corrections Ombudsman about this issue. (*Id.* at PageID.109).

Plaintiff received a response to one of his grievances. Guerin denied that any policies were violated on the work report filed by Haynes. Defendant Anderson reviewed the grievance. (*Id.* at PageID.109-110). The grievance was

rejected. Plaintiff did not get a response at the second step of the process, but at the third and final step, the rejection was upheld.

On February 25, 2020, Plaintiff returned to his prior facility for subsequent transport to an appointment at the V.A. Medical Center. Defendant Anderson told him not to get comfortable there, that he'd be returned to the correctional facility in Muskegon once his appointment was complete. But the COVID-19 pandemic began, and Plaintiff remained there in the 900 unit for a year. He sought to get his job back with the dog program, but he was not hired. (*Id.* at PageID.110-11). He was told he was not hired because of the work report Haynes submitted on September 5, 2019. Plaintiff filed a grievance about this issue. (*Id.* at PageID.111).

He alleges his Constitutional rights were violated in the following ways. Winn violated his free speech rights by requiring inmates to sign the "Regaining Honor" agreement or face retaliation. Winn authorized the prison transfer in violation of the First, Eighth, and Fourteenth Amendments. Haynes violated his free speech rights by coercing him to sign the agreement. Defendant Guerin violated his due process rights by acting "improperly" as a grievance respondent. Anderson, as the Step I grievance reviewer, denied him due process. LaBreck also denied Plaintiff due process by denying his request to correct the work reports. (*Id.* at PageID.112-13).

### III. DISCUSSION

    A.    <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's

"status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

      B.      <u>Exhaustion under the PLRA</u>

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### C. Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 21-2, PageID.182, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.184, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.185, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at

455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

   D.   Analysis

According to Defendants, the two grievances Plaintiff filed through Step III—SRF-18-06-0531-28b ("SRF-0531") and SRF-19-09-0966-28e ("SRF-0966")—do not exhaust administrative remedies on any claims here.

   1.   SRF-0531

Plaintiff submitted SRF-0531 at Step I alleging an incident date of May 31, 2018. He wrote that on that date, Haynes ordered him to sign an agreement for the "Honor Code" in unit 800. He was told that if he did not comply he would be moved to another building and he would lose his job as a dog handler. He asserted this was extortion. (ECF No. 21-3, PageID.203). The grievance was rejected because Plaintiff did not state "any action or inaction by staff that can be construed as a violation of policy or procedure." The grievance was seen as vague and was rejected. (*Id.*). Plaintiff appealed at Step II. He asserted his grievance was clear—if he did not sign the document he would be moved and lose his job. (*Id.* at PageID.202). A Step II response was not included in the record. Plaintiff appealed to Step III where the Step I rejection was upheld. (*Id.* at PageID.201).

Defendants argue this grievance does not exhaust any claims because it was the protected conduct forming the basis of the retaliation claims but did not exhaust

10

a retaliation claim and because it was rejected at Step I. (ECF No. 23, PageID.222). Plaintiff argues his grievance was clear and that it should have been forwarded to internal affairs because he grieved employee misconduct. He insists he properly filed a grievance about conditions of confinement, thus the rejection as "vague" is inaccurate. (ECF No. 22, PageID.207-08).

A properly submitted and appealed grievance would exhaust administrative remedies only for claims raised in that grievance. Plaintiff alleged Haynes threatened to move him and take away his job if he did not sign the agreement, which is one of the claims raised against Haynes here. So Defendants' argument that SRF-0531 does not exhaust administrative remedies on a retaliation claim is correct—the most this grievance could exhaust is the claim that on May 31, 2018, Haynes threatened to have Plaintiff fired and moved if he did not sign the agreement.

Defendants maintain that this claim is not exhausted because the grievance was denied as vague as Plaintiff did not allege a violation of policy. The rejection of a grievance does not end the analysis. It is appropriate for the Court to review the prison official's administration of the state grievance procedure. As explained in *Reeves v. Salisbury*, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012) *report and recommendation adopted in pertinent part, rejected on other grounds*, 2012

WL 3151594 (E.D. Mich. Aug. 2, 2012), the Court is not, "required to blindly accept the state's application of the procedural rule."

Here, there is no requirement in case law or in the MDOC grievance procedure that an inmate must state a violation of policy or procedure. The policy states that "Grievances may be submitted regarding alleged violations of policy or procedure *or unsatisfactory conditions of confinement that personally affect the grievant*, including alleged violations of this policy and related procedures."[1] (ECF No. 21-2, PageID.179, ¶ F) (emphasis added). Plaintiff's grievance about being coerced into signing an agreement is about unsatisfactory conditions of confinement, which is expressly a topic a prisoner may grieve without stating a policy or procedure violation. As to the rejection as vague, the undersigned does not agree. Plaintiff clearly stated his grievance against Haynes for forcing him to sign the agreement under threat of losing his job and being transferred. This was not stated vaguely.

Plaintiff took this grievance through all three steps of the process. The claim is thus fully exhausted.

---

[1] Defendants provided a copy of MDOC's grievance policy. The version they provided became effective on March 18, 2019, after Plaintiff filed SRF-0531. This policy does not apply to SRF-0531. That said, Plaintiff did not challenge the use of this policy directive in Defendants' argument. In fact, he also attached this version of the policy directive to his brief. Moreover, prior versions of the policy directive contained this exact same language, so there is no prejudice to either party in citing the current policy. *See, e.g.*, *Coleman v. Washington*, 2019 WL 6698063, at *4 (E.D. Mich. Oct. 31, 2019).

Alternatively, Defendants argue that this claim, if exhausted, should be dismissed because it is not a constitutional claim. (ECF No. 23, PageID.222). Whether the claim is viable will not be addressed here because this pre-answer motion for summary judgment on the issue of exhaustion of administrative remedies is not the proper place to argue the merits of a claim or whether a claim would defeat a motion to dismiss.[2]

2. SRF-0966

In this grievance, Plaintiff wrote that on September 5, 2019, Haynes inappropriately tried to have him sign a blank work report, but he refused. He said, "Classification refused to remove it." This sentence may be a reference to his request that the work report reflect that he signed it when it was blank. (ECF No. 21-3, PageID.192). Guerin was the Step I respondent, Anderson was the Step I reviewer. The investigation summary that the work report was filled out when Haynes asked Plaintiff to sign it. The report includes a notation of "Refused to Sign" on September 5, 2019. (*Id.* at PageID.194-96). The grievance was denied as no policy violation was found. The work report noted that Plaintiff refused to signed it and then it was forwarded to the Classification Director, as required. (*Id.* at PageID.193). There is no Step II appeal—the basis for Defendants' argument

---

[2] Moreover, the single-sentence statement that this is not a constitutional claim is perfunctory and would not be credited even if this were the proper venue for the argument.

13

about why this grievance does not exhaust administrative remedies. He signed a form to receive to a Step II appeal form, but again, he did not submit a Step II appeal. (*Id.* at PageID.200). Plaintiff instead filed a Step III appeal. Therein he asserted that he received the response at Step I on October 21, 2019, but his Step II appeal was due three days earlier. In other words, since he did not get his Step I response before the due date for his Step II appeal, he contends he could not file an appeal at Step II. (*Id.* at PageID.197). He later addressed the merits of his grievance in the Step III appeal. (*Id.* at PageID.197-99). The Step I rejection was upheld at Step III. (*Id.* at PageID.191). Somewhat confusingly, Defendants state that the Step III appeal was rejected because it did not contain the Step II documents, but the Step III response does not provide this information. Attached to Defendants' reply brief is an affidavit from MDOC's Grievance Section Managers and Hearings Administrator stating the grievance was rejected for failure to include the Step II documents.[3] (ECF No. 23-1, PageID.229, ¶ 7).

Plaintiff appears to assert that appealing at Step II would have been futile because defendant Winn was the Step II respondent. He questions "[w]hat reasonable finder of fact could ever assume that [Winn] would ever grant the Plaintiff any relief." (ECF No. 22, PageID.209). That a prisoner perceives that his

---

[3] This inconsistency in the documents need not be of concern because, as discussed below, this grievance was not exhausted for Plaintiff's failure to appeal at Step II. What happened at Step III is inconsequential to this analysis.

appeal will be rejected is not a valid reason not to appeal. He argues that he did not get his Step I response until three days after the Step II appeal was due, and had he tried to appeal then it would have been rejected as untimely. (*Id.*). As shown below, the untimeliness argument lacks merit. He also asserts that he requested a Step II appeal form but did not get one. (*Id.* at PageID.210). Finally, he argues the other forms of seeking redress that he attempted—letters to the MDOC director, letters to Internal Affairs, and so forth—should be considered valid attempts at redress. (*Id.* at PageID.211).

According to MDOC grievance policy, the Step I response was due to Plaintiff within 15 business days of receipt of the grievance. (ECF No. 21-2, PageID.183, ¶ Z). The prison acknowledged receipt on September 26, 2019. Its response was due October 17, 2019. A Step II appeal was due within 10 business days after receiving the Step I response or, if no response is received, within 10 business days after the date the response was due. (*Id.* at PageID.184, ¶ DD). The prison gave Plaintiff a response, which he says he received on October 21, 2019. Ten business days from then is November 4, 2019.[4] Rather than filing a Step II appeal, he filed a Step III appeal on October 21, 2019. (ECF No. 21-2, PageID.197-99). Plaintiff's insistence that a Step II appeal dated on or near

---

[4] If the prison had not responded at Step I, Plaintiff's Step II appeal would have been due October 31, 2019, ten business days after the Step I response was due.

October 21, 2019 would have been untimely lacks merit. Plaintiff could have and should have filed a Step II appeal.

A final assertion to address is Plaintiff's claim that he applied for a Step II appeal form on October 21, 2019 but did not get one. (ECF No. 22, PageID.210). This assertion of fact cannot be credited here because it is unsupported by a sworn statement; Plaintiff's brief had no statement that the facts asserted were done so under penalty of perjury, nor did Plaintiff submit an affidavit attesting to the facts. *See Alexander*, 576 F.3d at 558 (The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."). Second, according to the documents submitted, Plaintiff did not give the prison time to give him a form before he filed his Step III appeal. He filed the appeal the day he requested the Step II form.[5] And his time to appeal to Step II had yet to pass. For these reasons, the undersigned does not credit Plaintiff's statement that he could not have appealed at Step II because he did not receive the Step II appeal form on October 21, 2019.

The prison's policy directive requires prisoners to pursue their grievances through all three steps. The policy anticipates a late or absent Step I response by providing ten business days from receipt of the response or ten business from the

---

[5] Had Plaintiff filed a Step II appeal form after he filed his Step III appeal, it does not appear the prison would have accepted it, as the policy directive does not allow for out-of-time or out-of-sequence appeals.

16

date the response was due in which to file a Step II appeal.  Plaintiff's failure to pursue a Step II appeal within 10 business days of the Step I response and skipping to Step III means this grievance was not properly exhausted.

The recommendations here are that this Court should find that SRF-0531 exhausts Plaintiff's claim that defendant Haynes forced Plaintiff to sign an agreement or else face loss of his job and a prison transfer.  The Court should find SRF-0966 was not fully and properly exhausted, and thus any claims associated with this grievance were not exhausted.  In sum, the only claim that should move forward is the claim described only against Haynes.  The remaining claims and defendants should be dismissed and Defendants' motion should be **GRANTED IN PART, DENIED IN PART**.

IV. **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 21) be **GRANTED IN PART, DENIED IN PART**.  The undersigned further recommends that remaining Defendant(s) be ordered to file an answer or other appropriate response to the amended complaint after service of the Court's Order on this report and recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 27, 2022   s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 27, 2022.

                                                s/Kristen MacKay
                                                Case Manager
                                                (810) 341-7850